# RANSOM BLACKMAN LLP

ATTORNEYS
CONGRESS CENTER
1001 S.W. FIFTH AVENUE, SUITE 1400
PORTLAND, OREGON 97204-1144

JOHN S. RANSOM
MARC D. BLACKMAN

KENDRA M. MATTHEWS
[also admitted in Washington]
CRAIG J. GABRIEL

TELEPHONE (503) 228-0487
FACSIMILE (503) 227-5984
TOLL FREE (877) 357-8282
E-mail: marc@ransomblackman.com

## VIA FACSIMILE TRANSMISSION, CERTIFIED MAIL AND FIRST CLASS MAIL

September 8, 2006

Internal Revenue Service
600 17th Street
Mail Stop 4022 DEN
Denver, CO  80202-2490

      ATTN:  Doug Johnson

      Re:    **REQUEST FOR ADMINISTRATIVE REVIEW**

          Our Client:   Bobbie [Bobby] Ephrem

Dear Mr. Johnson:

     This Request for Administrative Review letter is addressed to you because John Joseph [the contact person identified on the enclosed Notice of Jeopardy Assessment (marked Enclosure A)] advised my Office Manager today that you are the appropriate person to whom it is to be submitted. If that information is not correct, please forward it to the appropriate person immediately and notify us in writing of that person's name and contact information.

     This firm represents Bobbie [Bobby] Ephrem. A copy of the Power of Attorney and Declaration of Representative Form 2848 signed by Mr. Ephrem on August 18, 2006 [marked Enclosure B] is enclosed for your ready access.

     Pursuant to Section 7429 of the Internal Revenue Code, Mr. Eprem requests administrative review and rescission of the jeopardy assessment dated August 23, 2006 for the tax years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004 and 2005.

     Review is requested and required for both procedural and substantive reasons. Procedurally, rescission and the immediate release of all levied property is required

Exhibit 2
Page 1 of 27
Complaint for Review of
Jeopardy Assessment

Internal Revenue Service
ATTN: Doug Johnson
September 8, 2006
Page 2

because from the Notice itself it seems clear that the Chief Counsel for the Internal
Revenue Service did not personally approve the assessment in writing, as required by
Section 7429(a)(1)(A) of the Internal Revenue Code. The Notice is therefore a nullity and
continued detention or restraint on property unlawful and unconstitutional.

Substantively, review is required to redetermine at least the following:

    A.    whether making a jeopardy assessment was reasonable;

    B.    whether the amount assessed bears any relationship to any possible
tax liability; and

    C.    whether there is any credible evidence to support the allegation that
Mr. Ephem was concealing and/or dissipating assets.

These matters must be redetermined, because it is apparent on the face of the
Notice that:

1. The Jeopardy Assessment was made without due diligence or adequate
investigation by the Internal Revenue Service;[1]

2. The Jeopardy Assessment itself alleges matters that demonstrate that
Mr. Ephrem was not dissipating assets, but hoarding them;

3. The asserted amount of the tax due is overstated;

4. The amount of income attributed to Mr. Ephrem is grossly exaggerated;

5. The amount of income attributed to Mr. Ephrem improperly includes
substantial accommodation transactions, loans, gifts, cash left to him and

---

[1] For example, it appears that no effort was made to determine the age of the currency
found in the safe deposit boxes, or the dates, if any, that Mr. Ephrem or anyone acting on his
behalf accessed these safe deposit boxes. We urge the Service immediately to obtain and share
this information with us and agree to release to Mr. Ephrem and/or his siblings: (1) all currency
printed in or before 1995; (2) the cash equivalent of any such currency that the Service converted
into cashier's checks; and (3) all contents of any safe deposit box that the Service cannot
demonstrate was accessed by Mr. Ephrem or anyone acting on his behalf after 1995.

Exhibit 2
Page 2 of 27
Complaint for Review of
Jeopardy Assessment

Internal Revenue Service
ATTN: Doug Johnson
September 8, 2006
Page 3

> his siblings following the deaths of their father [in 1992] and mother [in 1995], and cash entrusted to his care and safe-keeping by third parties and family members;[2]

6.    Income attributed to business operations overstates sales, understates expenses, and fails accurately to account for available deductions, applicable exemptions, entitled credits, and other items granted favorable treatment under the Internal Revenue Code;

7.    The determination of Mr. Ephrem's taxable income and tax liability was depends on evidence and information that may not be considered by the Service because it was secured in violation of the Internal Revenue Code and United States Constitution;

8.    The passage of time precludes imposition of tax liability for many of the tax years the Notice purports to cover; and

9.    The Jeopardy Assessment was premised, in part, on income tax forms attributed to Mr. Ephrem in absence of any evidence that he was responsble for their preparation, was aware of their contents, or had any intent to file or otherwise use them. Indeed, the Service acknowledges that these forms were in fact never filed or otherwise used.

Due to the deadlines imposed by statute for the filing of this Request, the assertions set forth in footnotes 1 and 2 are the only specifics we can cite at this time to demonstrate that the Service has made an egregious error in attributing substantial income over many years to Mr. Ephrem. But they alone require the Service to rescind the Jeopardy Assessment; recognizing that a significant portion of the cash found at Mr. Ephrem's home and in the safety deposit boxes does not represent the fruits of earned income, but the legacy of his parents and the trust of his friends and family in and of

---

[2] Although we have had little time to investigate this matter, we have already received reliable information that leads us to believe in good faith that third-party business records and third party sworn testimony will establish that in excess of $1.5 million of the cash seized by Internal Revenue Service Special Agents from safe deposit boxes and Mr. Ephrem's home was cash left to his siblings by their parents, non-taxable insurance proceeds received by family members, and cash entrusted to his care and safe-keeping in his capacity as the "patriarch" of his family and a trusted member of his community.

Exhibit 2
Page 3 of 27
Complaint for Review of
Jeopardy Assessment

Internal Revenue Service
ATTN: Doug Johnson
September 8, 2006
Page 4

themselves demonstrate that the Service may not statutorily or constitutionally resort to
the extraordinary remedy of a Jeopardy Assessment.

    For each of these reasons, we urge you and the Service in the strongest terms to
agree to review, redetermine, and rescind the August 23, 2006 Jeopardy Assessment.

                Sincerely,

                MARC D. BLACKMAN

ENC.

cc:    Bobby Ephrem

Exhibit 2
Page 4 of 27
Complaint for Review of
Jeopardy Assessment

Internal Revenue Service
ATTN: Doug Johnson
September 8, 2006
Page 4

themselves demonstrate that the Service may not statutorily or constitutionally resort to the extraordinary remedy of a Jeopardy Assessment.

For each of these reasons, we urge you and the Service in the strongest terms to agree to review, redetermine, and rescind the August 23, 2006 Jeopardy Assessment.

Sincerely,

MARC D. BLACKMAN

ENC.

cc:     Bobby Ephrem

bcc:    Ronald H. Hoevet, Esq. [with enclosures]
        Cathy Matthews, CPA [with enclosures]
        Michael Sandoval, Esq. [with enclosures]

Exhibit 2
Page 5 of 27
Complaint for Review of
Jeopardy Assessment



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

Person to Contact: John Joseph

Employee I. D. Number: 84-01035

Bobby Ephrem
421 NE 116th Place
Portland, OR 97220-2336

Telephone Number: (303) 446-1171

Fax Number: (303) 446-1155

Refer Reply To:  Mail Stop 4021
600 17th Street
Denver CO 80202

Date:     8/23/2006

### NOTICE OF JEOPARDY ASSESSMENT AND RIGHT OF APPEAL

Dear Taxpayer:

Under Section 6861 of the Internal Revenue Code, you are notified that I have found you concealing and/or dissipating your assets thereby tending to prejudice or render ineffectual collection of income tax for the taxable years 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004 and 2005.

Our investigation revealed the following:

### We believe you have used nominees in an attempt to conceal substantial income and assets

Evidence obtained shows that you built a personal residence in 1999.  From February 3, 1999 through February 21, 1999, twenty nine cashiers checks totaling $114,705.00 were structured to pay Chicago Title Insurance Co. for the purchase of the property. Various family members assisted in this structuring, where you and your wife Donna Smith presented all of these cashiers checks to the Title Company.  Ten of these cashiers checks totaling $40,373 were purchased by you.  A Form 8300 was issued for $119, 120.  The currency to purchase all of these cashiers checks appears to have originated from your business.  Information obtained indicates that you also paid approximately $300,000 for the construction of the residence using third party checks endorsed over to the builder. This information indicates that you took customer payments for auto purchases, and endorsed these checks over to the builder, thereby avoiding depositing to the bank and concealing your income.  The residence is

Enclosure A
Page 1 of 20

1

Exhibit 2
Page 6 of 27
Complaint for Review of
Jeopardy Assessment

completely paid off and is in the name of Donna Smith and Robert Melius (the builder). Information obtained shows that Robert Melius has absolutely no interest in the residence.  As a result you have concealed the income used to pay for the residence and you have used your wife, Donna Smith as a nominee to conceal that you own the residence.

You used false SSN's conducting multiple 8300 and currency transactions (CTR's). You used your son's SSN on the bank account of the business.  You also had a preparer draft returns in your name for the years 2000 and 2001, however, you used your son Robert Ephrem's SSN.

## You have concealed or attempted to conceal substantial income and assets

### You concealed substantial currency-CASH from the Government by keeping it hidden in your personal  residence and in safe deposit boxes.

On August 15, 2006, Special Agents with the IRS, Criminal Investigations executed a Federal Search Warrant at your residence located at 9379 SE Highgate Drive.  Special Agents seized a total of $366,768.50 in U.S. currency.  $86,557.00 in U.S. currency was found within numerous bags, which was located in a bedroom closet on the second floor of the residence.  $36,850.00 in U.S. currency was found within a milk carton, which was located in the attic under the floor between the floor joists.  $32,893.00 was found within a number of handbags, which was located in a bedroom closet on the second floor of the residence.  $38,380.00 in U.S. currency was found within a red colored suit jacket and $26,800.00 in U.S. currency was found within a green colored suit jacket, which were both located within the master bedroom closet on the first floor of the residence.  $144,300.00 in U.S. currency was found within a US Bank bag, which was located on the floor within the master bedroom closet on the first floor of the residence. $988.50 in U.S. currency was found in numerous locations throughout the residence.

On August 16, 2006, Special Agents with the IRS, Criminal Investigations executed a Federal Search Warrant on safe deposit box number 184-1306 at the US Bank branch located at 300 E Powell Blvd., Gresham, Oregon.  One of the keys that were found at your residence was used to open the safe deposit box.  Within the safe deposit box were seven (7) separate bags containing US currency and a small bag containing 10 Canadian $50 gold coins.  The US currency contained within the seven (7) bags totaled $605,981.00.  The currency was converted by the government into a cashier's check in the amount of $605,981.00, payable to the Internal Revenue Service.  A safe deposit signature card was obtained from US Bank which shows that the safe deposit box was opened on December 28, 1996 by "Bobbie Ephrem" and "Donna Smith".  The SSN listed on the signature card for "Bobbie Ephrem" is "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" and for "Donna Smith" is "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".  Their address is listed on the signature card as "421 NE 116[th] Place, Portland, Oregon 97220".

On August 16, 2006, Special Agents with the IRS, Criminal Investigations executed a Federal Search Warrant on safe deposit box number 220-713 at the US Bank branch located at 4100 NE 122nd Avenue, Portland, Oregon.  One of the keys that was found at

Exhibit 2
Page 7 of 27
Complaint for Review of
Jeopardy Assessment

your residence was used to open the safe deposit box. The box contained $661,053.00 in US currency consisting mostly of $100.00 and $50.00 bills. Most of the currency was in vinyl zippered bags. Inside of the vinyl bags the currency was further wrapped in various types of wrappings to include purple colored "Crown Royal" bags, socks and paper wrappings. Most of the paper wrappings appeared to be elementary school papers with the name "Robert" written on them. The box also included a small number of miscellaneous documents. A Special Warranty Deed recorded by Ticor Title Insurance shows a deed for 421 NE 116th Place, Portland, OR granted by Clifford Archer to Donna Smith on December 7, 1989. A small amount of vehicle sales documents were in the safe deposit box including documents from Portland Auto Auction and South Seattle Auto Auction. A safe deposit signature card was obtained from US Bank with shows that the safe deposit box was opened on January 10, 1990 by "Diana Ephrem" and "Laura Ephrem". Their address is listed on the signature card as "421 NE 116[th] Place, Portland, Oregon 97220".

On August 16, 2006 at 9:00 AM, Special Agents with the IRS, Criminal Investigations executed a Search Warrant in the matter or Washington Mutual Safety Deposit Box Number 505 located at 1515 NE 112th Avenue, Portland, Oregon. At approximately 9:00 AM, agents entered Washington Mutual, Gateway Financial Center, located at 1515 NE 112th Avenue Portland, Oregon 97220. Agents introduced themselves to a bank employee and presented their credentials for inspection. An agent told a bank employee they were there to execute a search warrant on Safe Deposit Box #505. Agents seized items that included 10 bags of currency. The 10 bags of currency totaled $1,120,377.00. One of the keys that were found at your residence was used to open the safe deposit box.

On August 15, 2006, Special Agents with the Internal Revenue Service, Criminal Investigations interviewed Robert Ephrem, son of Bobby Ephrem. Robert Ephrem emphasized that it's his father that handles all the money. He stated all of the cash goes to his father (with exception of about $11,000 that Robert Ephrem had). He also stated that his father told him not to deposit cash into the bank.

**In summary, you concealed the following currency:**

**a. Concealed currency at your residence**

| Amount | Location |
| --- | --- |
| $86,557.00 | Bedroom Closet, Second Floor |
| $36,850.00 | Milk Carton - Attic under Floor Joists |
| $32,893.00 | Multiple Handbags - Bedroom, Closet 2nd Floor |
| $38,380.00 | Red Colored suit Jacket – Mst. Bedroom Closet, 1st Floor |
| $26,800.00 | Green Colored suit Jacket – Mst. Bedroom Closet, 1st Floor |
| $144,300.00 | US Bank Bag – On Floor Master Bedroom, First Floor |
| $988.50 | Numerous Locations |
| **$366,768.50** | **Total Currency in Residence** |

Exhibit 2
Page 8 of 27
Complaint for Review of
Jeopardy Assessment

### b. Concealed currency in safe deposit boxes

| Amount | Location |
|--------|----------|
| $605,981.00 | Box 184-1306, US Bank 300 E Powell, Portland, OR |
| $661,053.00 | Box 220-713 US Bank 4100 NE 122nd Ave., Portland, OR |
| $1,120,377.00 | Box 505 Washington Mutual 1515 NE 112th Ave, Portland, OR |
| **$2,387,411.00** | **Total Currency in Safe Deposit Boxes** |

### Total Currency Seized $2,754,179.50

In summary, you concealed $2,754,179.50 total dollars of currency within your residence in numerous locations and in three safe deposit boxes:

In a further and one last attempt to conceal the currency from the government, at the time of the search warrant, you stated that you had no currency in your residence, yet $366,768.50 in currency was in your residence, a large part of which was in your bedroom.

### You attempted to conceal your income by having false Forms 1040 and Schedule C Forms (yet unfiled) prepared reporting only a fraction of your gross receipts

You attempted or planned to attempt to conceal your income by having false Forms 1040 and Schedule C Forms prepared, yet unfiled, using your son Robert's SSN 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. Although these forms were not filed, it shows your intent to conceal your own substantial income compared to what was reported on the unfiled returns, and it shows your intent to conceal your business and your income under your son's SSN.

| Year | Actual Gross Receipts Computed | Gross Receipts on False Returns | Difference |
|------|-------------------------------|--------------------------------|------------|
| 2000 | $5,782,779 | $144,812 | $5,637,967 |
| 2001 | $3,287,482 | $149,973 | $3,137,509 |

You also concealed your income by recently having false Forms 1040 and Schedule C's prepared in your own SSN after receiving an IRS Notice for the years 2004 that you had failed to file tax returns. On the 2004 and 2005 returns secured from the return preparer, you failed to report on these forms, nearly 16 million dollars in gross receipts as computed by the Internal Revenue Service.

| Year | Actual Gross Receipts Computed | Gross Receipts on False Returns | Difference |
|------|-------------------------------|--------------------------------|------------|
| 2004 | $6,654,957 | $345,728 | $6,309,229 |
| 2005 | $9,894,736 | $360,895 | $9,533,841 |

Exhibit 2
Page 9 of 27
Complaint for Review of
Jeopardy Assessment

**You concealed your income and assets by failing to deposit substantial currency into bank accounts you maintained**

You maintained a number of bank accounts; however you failed to deposit at least $2,754,179.50 in U.S. currency which concealed this income and asset from the Internal Revenue Service. The currency was located within your personal residence and within three safe deposit boxes and was seized during the execution of Federal search warrant by Special Agents with the Internal Revenue Service.

Additionally, we believe that you structured cashiers checks to avoid the filing of currency transaction reports (CTR) for the down payment on your personal residence at 9379 SE Highgate Drive, Portland. This information is discussed in detail previously above. Information we have obtained indicates the residence cost over $400,000. Information also shows that you paid the remaining balance of nearly $300,000 by not depositing, but by endorsing third party checks believed to be from your customers on purchases of autos that you sold.

You had the following bank accounts:

1. Bank of America account number 21106-29782 under the name "Bobbie Ephrem". The address on the account is listed as "421 NE 116th Place, Portland, Oregon 97220".
2. US Bank account number 153657336647 under the name "Bobby's Auto Sales" and "Bobbie Ephrem". The address on the account is listed as "1205 NE 82nd Avenue, Portland, Oregon 97220".
3. US Bank account number 153655808464 under the name "Bobbys Auto Sales". The address on the account is listed as "740 SE 82nd Avenue, Portland, Oregon 97216-1104".

In an interview of your son Robert Ephrem, he stated that you had told him to not deposit any currency into bank accounts. This further confirms your intent to conceal currency and your assets from the government.

**You possessed and you deal in huge amounts of cash**

Special Agents with the Internal Revenue Service, Criminal Investigations located and seized $2,754,179.50 of U.S. currency from your personal residence and from three safe deposit boxes believed to be under your control. The currency in your residence was hidden in various locations. Additionally, you denied the existence of the currency when asked by Special Agents.

Enclosure A
Page 5 of 20

5

Exhibit 2
Page 10 of 27
Complaint for Review of
Jeopardy Assessment

**You have failed to file and failed to report any income despite possession of large amounts of cash**

As discussed above, you had possession of and in safe deposit boxes with $2,754,179.50 in cash. You failed to file tax returns for the years 1996 through and including 2005 and failed to report substantial income for each of these years. You failed to report the following income even though you were in possession of $2,754,179.50 million in currency:

| Year | Gross Receipts Corrected | Gross Receipts Reported | Unreported Gross Receipts |
|------|--------------------------|-------------------------|---------------------------|
| 1996 | $2,576,758 | -0- | $2,576,758 |
| 1997 | $3,192,203 | -0- | $3,192,203 |
| 1998 | $2,919,421 | -0- | $2,919,421 |
| 1999 | $5,885,634 | -0- | $5,885,634 |
| 2000 | $5,782,779 | -0- | $5,782,779 |
| 2001 | $3,287,482 | -0- | $3,287,482 |
| 2002 | $10,870,060 | -0- | $10,870,060 |
| 2003 | $7,035,325 | -0- | $7,035,325 |
| 2004 | $6,654,957 | -0- | $6,654,957 |
| 2005 | $9,894,736 | -0- | $9,894,736 |

During the period from 1996 through 2005, you failed to report the following computed income:

| Year | Gross Receipts | Gross Profit | Taxable Income |
|------|----------------|--------------|----------------|
| 1996 | $2,576,758 | $317,714 | $305,572 |
| 1997 | $3,192,203 | 393,599 | $380,123 |
| 1998 | $2,919,421 | 359,965 | $347,353 |
| 1999 | $5,885,634 | 725,699 | $707,180 |
| 2000 | $5,782,779 | 713,017 | $694,345 |
| 2001 | $3,287,482 | 405,346 | $390,383 |
| 2002 | $10,870,060 | 1,340,278 | $1,312,367 |
| 2003 | $7,035,325 | 1,403,932 | $1,374,988 |
| 2004 | $6,654,957 | 1,404,647 | $1,375,538 |
| 2005 | $9,894,736 | 1,631,370 | $1,598,944 |

Enclosure A
Page 6 of 20

6

Exhibit 2
Page 11 of 27
Complaint for Review of
Jeopardy Assessment

In summary, during the years 1996 through 2005 you failed to file and failed to report any income, when based on conservative income computations you had gross receipts during this same period of $68,392,563.

## You failed to make any estimated tax payments even though you had in your possession nearly 3 million in currency

You had substantial net income and accumulated nearly 3 million in currency, for the years 1996 through 2005, however you failed to make any estimated tax payments on the income earned.

## You have used false SSN's, i.e. in an attempt to conceal your income and your assets

You have used multiple false SSN's.   We believe you have used false or other individuals SSN's to conceal your identity, your business, your financial transactions, and your income and assets.

IRS records show that during 2001, 2002 and 2003, Forms 1099-INT, Interest Income, were filed by US Bank to report interest that was paid to "Bobbie Ephrem dba Bobby's Auto Sales, 740 SE 82nd Ave, Portland, OR 97216."   The SSN that the forms were filed under was 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, which is the SSN of your son, Robert Ephrem.  Additionally you used his SSN on draft Forms 1040 and Schedule C for the years 2000 and 2001.

Currency and Banking records show you used multiple false SSN's to conduct currency transactions.  Your SSN is 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, however, you conducted the following transactions using false or other individual's SSNs:

|    | Date | Type Transaction | Amount | Transactor | SSN Used |
|----|------|------|--------|------------|----------|
| 1. | 5/20/94 | 8300 | $13,902 | Bobby Ephrem | 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 |
| 2. | 1994 | 8300 | $12,535 | Bobby Ephrem | 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 |
| 3. | 1994 | 8300 | $13,013 | Bobby Ephrem | 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 |
| 4. | 11/4/94 | 8300 | $10,050 | Bobby Ephrem | 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 |
| 5. | 1994 | 8300 | $12,965 | Bobby Ephrem | 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 |
| 6. | 8/31/95 | 8300 | $11,234 | Bobby Ephrem | 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 |
| 7. | 2/20/98 | 8300 | $10,704 | Bobby Ephrem | 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 |
| 8. | 10/27/99 | 8300 | $10,031 | Bobby Ephrem | 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 |
| 9. | 11/26/02 | CTR | $11,600 | Bobby Ephrem | 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 |

IRS Records show that 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 and 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 are not your SSN's, i.e., you used false SSN's to conduct the above transactions.

Enclosure A
Page 7 of 20

7

Exhibit 2
Page 12 of 27
Complaint for Review of
Jeopardy Assessment

**You have failed to keep appropriate financial information**

Search warrants of your business and residence failed to find any regular books or records. Evidence obtained from your preparer shows you failed to keep any type of books and records to summarize your income for all years, 2005 and prior.

**There is a lack of assets from which the tax liability can be collected**

There is a lack of assets from which the potential tax liability can be collected (other than the currency which may be returned to you which the Service believes will be concealed, transferred or otherwise disposed of). Based on information known to date the real property that you own is not sufficient if liquidated to pay the tax liability that you owe.

***The Service believes that if currency is returned to you, that you will transfer, attempt to transfer, dissipate, or conceal this currency from the Internal Revenue Service.***

The Service believes you could easily dissipate part or all of the currency when/if returned to you. You have a history of concealing your income and your assets from the Internal Revenue Service in an attempt to place your assets beyond the reach of the government. This includes the concealment of substantial currency in your residence and in safe deposit boxes. You have used nominees to conceal the payment of and your ownership interest in real property. You have used false SSN's to conceal currency transactions and your ownership of bank accounts. We believe that if the currency seized is returned to you that you will again attempt to place this currency and your assets beyond the reach of the government by transferring, concealing, or otherwise dissipating it.

Recent examples include(1) Your concealment of $2,754,179.50 at your residence and in safe deposit boxes, (2) failing to deposit this currency generated in your business, (3) failing to keep business records concealing your income, (4) preparation of false 2004 & 2005 federal returns to conceal your income and (5) you denying the existence of currency in your residence at the time of the search warrant. Additionally your wife made an attempt during the execution of a Federal Search Warrant to remove from the premises a purse that contained $32,633.00 in U.S. currency.

Even though some of the events occurred in the past, in totality, you have shown that you have the absolute propensity to conceal your income and assets from the government, thereby tending to prejudice or render ineffectual collection of income tax for the taxable years 1996 through and including 2005.

The above stated facts jeopardize or prejudice or impede the collection of income tax for the periods ending December 31, 1996, December 31, 1997, December 31, 1998, December 31, 1999, December 31, 2000, December 31, 2001, December 31, 2002, December 31, 2003, December 31, 2004, and December 31, 2005. Accordingly,

Enclosure A
Page 8 of 20

8

Exhibit 2
Page 13 of 27
Complaint for Review of
Jeopardy Assessment

based on information available at this time, I have approved assessment of tax and additional amounts determined to be due as reflected in the attached computations:

| Taxable Period | Tax | Penalty | Interest |
|---|---|---|---|
| 1996 | $125,048 | $128,578 | $225,093 |
| 1997 | $156,612 | $161,076 | $231,253 |
| 1998 | $142,476 | $145,434 | $173,695 |
| 1999 | $295,339 | $302,249 | $287,040 |
| 2000 | $290,126 | $298,370 | $208,854 |
| 2001 | $159,479 | $161,865 | $86,070 |
| 2002 | $538,674 | $518,968 | $210,605 |
| 2003 | $517,236 | $463,531 | $144,657 |
| 2004 | $517,278 | $434,010 | $89,793 |
| 2005 | $601,513 | $475,262 | $27,932 |
| Total | $3,343,781 | $3,089,342 | $1,684,992 |

Under Section 7429 of the Internal Revenue Code, you are entitled to request administrative and judicial reviews of this assessment action.

For an administrative review, you may file a written protest with the Director, Western Area Examination, SB/SE within 30 days from the date of this letter, requesting redetermination of whether or not:

1. the making of the jeopardy assessment is reasonable under the circumstances, and

2. the amount so assessed or demanded as a result of the action is appropriate under the circumstances.

When feasible, a conference will be held on an expedite basis to consider your protest. Your protest will be forwarded to the Regional Appeals Office where a conference will be held.

If you submit new information or documentation for the first time at an Appeals conference, the Appeals Office may request comment from the Director, Western Area Examination, SB/SE on such evidence or documents.

Enforced collection action may proceed during any administrative appeal process unless arrangements are made regarding collection of the amount assessed. To make such arrangements, please contact Revenue Officer **Teresa A. Kelly 503-399-5621x224.**

You may request a judicial review of this assessment by bringing a civil suit against the United States in the U.S. District Court in the judicial district in which you reside, or in which your principal office is located. However, in order to have this action reviewed by

Enclosure A
Page 9 of 20

9

Exhibit 2
Page 14 of 27
Complaint for Review of
Jeopardy Assessment

the District Court, you must request administrative review within 30 days of the date of this letter. Such suit must be filed within 90 days after the earlier of (1) the day that the Service notifies you of its decision on your request for administrative review, or (2) the 16th day after your request for administrative review was made. *The Court will make an early determination of the same points raised in your protest to determine whether the making of the assessment is reasonable under the circumstances, and whether the amount assessed or demanded is appropriate under the circumstances. The Court's determination is final and not reviewable by any other court.*

## Appeal to the Courts in Case of Income, Estate, Gift and Certain Excise Taxes

If an agreement is not reached with the Internal Revenue Service, a notice of deficiency is required by law to be issued within 60 days from the date of jeopardy assessment made under section 6861 of the Internal Revenue Code. You will then have 90 days (150 days if outside the United States) from the date the notice is mailed to file a petition with the United States Tax Court.

## Appeal to Courts in Case of Other Taxes Assessed Under IRC 6862

Claim for credit or refund of taxes assessed under section 6862 of the Internal Revenue Code may be filed in accordance with section 6511(a) of the Code for administrative and judicial review of the merits of the liability assessed. An administrative decision on the claim may be appealed to the courts under the provisions of section 7422(a) of the Code.

If you have questions about this letter, you may call or write the office of the contact person identified on the front of this letter. You also have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures, and it cannot reverse legally correct tax determinations nor extend the fixed time for you to request an administrative review or bring civil suit. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate assistance, call 1 (877) 777-4778.

Thank you for your cooperation.

Sincerely,

*Julie Slaght, for*

**Gerald W. Reese**
Director, Western Area Examination, SB/SE

Enclosures:
Tax Computation Method and Amounts

10

Exhibit 2
Page 15 of 27
Complaint for Review of
Jeopardy Assessment

**EXPLANATION OF GROSS PROFIT AND GROSS PROFIT % AND GROSS RECEIPTS USED FOR THE TAX COMP OF BOBBY EPHRAM FOR TAX YEARS 1996 – 2005.**

### GROSS PROFIT AND GROSS PROFIT %

"Deal" files also known as "jackets," for the years 1996 through 2005, were recovered in the search warrant executed by IRS-CI of the taxpayer's business and residence. For 2003 to 2005, each deal jacket was reviewed and entered into a data base by SBSE Revenue Agents. The database showed the box #, jacket #, date, customer, sales price, total cost, car profit (sale price minus total cost), salesperson's commissions (25% of car profit) and net profit (car profit minus sales commission). "Pack fees" (see explanation below) and wholesale sales were also marked. The information was hand recorded on the outside of the jackets. The jackets contained the purchase and sales documents and registration and DMV records.

"Pack fees" were fees that taxpayer added the cost of his retail sales for general overhead expenses. The fee was $400 per car ($350 prior to 2003). The pack fee was recorded on the deal jacket as part of total cost. There was no supporting documentation substantiating the business purpose for the pack fee per IRC section 162. The total pack fees were added to total net profit as a separate line item.

Based on the database and review of the jackets, 2005 appeared to be the most complete and accurate and thus was used as a base year for determining average wholesale net profit per unit for prior years. The database revealed that for 2004 and 2003 years there were only a very nominal amount of deal jackets for wholesale sales which indicated that the wholesales were not recorded and maintained in deal jackets as in 2005.

In 2005 deal jackets were seized in their original boxes which were labeled as wholesale sales (Box #30, #32, #39, #34, #40). In addition, the deal jackets for the wholesale sales showed that the buyer was generally an auto auction. For the retail sales the buyers were individuals.

To compute Retail sales gross receipts for earlier years, sales records for years 2003 through 2005 were analyzed to calculate an average retail profit amount. These years (2003-2005) were selected to compute average retail profit amounts as these years had the most complete data on retail sales. Once the average retail profit per car was calculated ($941.33), this amount was multiplied by the actual number of known retail car sales in each earlier year.

Therefore, the 2004 wholesale sales were computed based on records of known wholesales in 2003. The known wholesales in 2003 were obtained from a binder of handwritten entries of sales to various auto auctions. The binder was recovered from the taxpayer's residence during the search warrants. Only the sales price per vehicle was recorded. Purchase price was not recorded. In 2003, total units sold (wholesale) were 1046 for a total sale price of $3,511,377. For 2002, total units sold (wholesale) were 777 for a total sale price of $2,526,290.

11

Enclosure A
Page 11 of 20

Exhibit 2
Page 16 of 27
Complaint for Review of
Jeopardy Assessment

## *GROSS PROFIT AND GROSS PROFIT %*

**1996** – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 202 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $190,148.66
Plus Pack Fees deducted for all Retail Sales = 202 retail car jackets * $350 = $70,700
Wholesale Sales = 90 car jackets * Average Wholesale profit 2005 $631.84 = $56,865.60
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $317,714.26

**1997** – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 250 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $235,332.50
Plus Pack Fees deducted for all Retail Sales = 250 retail car jackets * $350 = $87,500
Wholesale Sales = 112 car jackets * Average Wholesale profit 2005 $631.84 = $70,766.08
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $393,598.58

**1998** – No actual data was obtained however the taxpayer was in business in 1997 and 1999 and it is reasonable to assume the business was in operation during tax year 1998. Therefore Gross Sales were estimated in 1998 by using the total jackets/car sold in 1997 and using reasonable percentages of 55% retail and 45% wholesale. Gross profit was then arrived at by 1) multiplying retail jackets by the average retail profit over tax years 2003 – 2005 plus+ 2) whole sale jackets multiplied by the average wholesale profit for tax year 2005.

Retail Sales = 199 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $187,324.67
Plus Pack Fees deducted for all Retail Sales = 199 retail car jackets * $350 = $69,650.00
Wholesale Sales = 163 car jackets * Average Wholesale profit 2005 $631.84 = $102,989.92
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $359,964.60

Enclosure A
Page 12 of 20

12

Exhibit 2
Page 17 of 27
Complaint for Review of
Jeopardy Assessment

**1999** – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 401 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $377,473.33
Plus Pack Fees deducted for all Retail Sales = 401 retail car jackets * $350 = $140,350.00
Wholesale Sales = 329 car jackets * Average Wholesale profit 2005 $631.84 = $207,875.36
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $725,698.69

**2000** – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 148 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $139,316.84
Plus Pack Fees deducted for all Retail Sales = 148 retail car jackets * $350 = $51,800.00
Wholesale Sales = 826 car jackets * Average Wholesale profit 2005 $631.84 = $521,899.84
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $713,016.68

**2001** – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 195 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $183,559.35
Plus Pack Fees deducted for all Retail Sales = 195 retail car jackets * $350 = $68,250.00
Wholesale Sales = 243 car jackets * Average Wholesale profit 2005 $631.84 = $153,537.12
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $405,346.47

Exhibit 2
Page 18 of 27
Complaint for Review of
Jeopardy Assessment

<u>2002</u> – Total Wholesale (W/S) and Retail (R/S) car jackets were obtained however actual sales price, cost of sale, and car profit was not computed. Alternatively gross profit was computed using the summed total of retail (R/S) and whole sale (W/S) car jacket and multiplying by Average R/S profit from 2003 – 2005 and the 2005 average W/S profit.

Retail Sales = 508 car jackets * Average Retail profit for 2003 – 2005 $941.33 = $478,195.64
Plus Pack Fees deducted for all Retail Sales = 508 retail car jackets * $350 = $177,800.00
Wholesale Sales = 1083 car jackets * Average Wholesale profit 2005 $631.84 = $684,282.72
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $1,340,278.36


<u>2003</u> - For Tax year 2003 total retail sales were arrived at using actual figures for retail sales (R/S). The total Car Gross profit is $563,828. For tax year 2003 Whole Sale (W/S) figures were arrived at by totaling W/S car jackets and using the 2005 W/S average profit per unit of $631.83. The 2005 W/S profit per unit was used as the most conservative estimate as it appears the complete records were obtained for tax year 2005.

Retail Sales = Total Retail Sales $1,675,195 – Cost $1,111,367.75 = $563,827.25.
Plus Pack Fees deducted for all Retail Sales = 448 retail car jackets * $400 = $179,200.00
Wholesale Sales = 1046 car jackets * Average Wholesale profit 2005 $631.84 = $660,904.64
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $1,403,931.68


<u>2004</u> – Gross profit for 2004 was arrived at using a % for whole sales as these jackets were not obtained. The percentage was arrived at using the 2003 % of whole sales out of total sales. The total retail units sold in 2004 was divided by this % to arrive at total whole sale units sold in 2004. The total W/S units were then multiplied by the 2005 W/S average profit/unit to arrive at Gross Profit. The total R/S units were determined using actual sales of vehicles during 2004 obtained from actual car jackets.

Retail Sales = Total Retail Sales $1,721,878 – Cost $1,113,630 = $608,248.60
Plus Pack Fees identified with actual records = **473** retail car jackets * $400 = **$189,200**
Wholesale Sales = 961 car jackets (based on Total retail units 2004/2003 % of W/S units)* Average Wholesale profit 2005 $631.84 = $607,198.24
Total Gross Profit = Sum of Retail Sales, Pack Fees, and Wholesale Sales = $1,404,647

Exhibit 2
Page 19 of 27
Complaint for Review of
Jeopardy Assessment

<u>2005</u> – Gross profit for 2005 was arrived at using actual figures obtained from all car sales jackets (Whole Sale and Retail).

Total sales price $9,894,735.66 – cost of vehicles $8,376,193.38 = car profit $1,518,542.28– commissions paid $61,971.83 = Gross Profit $1,456,570
Plus Pack Fees identified with actual records = 437 retail car jackets * $400 = $174,800.00
Total Gross Profit = $1,631,370

## GROSS RECEIPTS

Gross Receipts was determined taking the overall Gross profit for tax years 1996 – 2002 divided by the gross profit % for 2005. The gross profit % for 2005 is 12.33%.

1996 = 317,714.26/.1233 = $2,576,758
1997 = 393,598.58/.1233 = $3,192,203
1998 = 359,964.6/.1233 = $2,919,421
1999 = 725,698.69/.1233 = $5,885,634
2000 = 713,016.68/.1233 = $5,782,779
2001 = 405,346.47/.1233 = $3,287,482
2002 = 1,340,278.36/.1233 = $10,870,060
2003 = Actual retail sales $1,675,195.43 + (W/S $660,904/.1233 = $5,360,130) = $7,035,325
2004 = Actual retail sales $1,721,878.60 + (W/S $608,248.60/.1233 =$4,933,079) = $6,654,957.00
2005 = Actual gross receipts of $9,894,735.66

----------------------------------------------------------------------------------------

Exhibit 2
Page 20 of 27
Complaint for Review of
Jeopardy Assessment

**Bobby Ephrem**

|  | MFS<br>1996 | MFS<br>1997 |
|---|---|---|
| Sch C Gross Profit | 317,714 | 393,599 |
| SE AGI Adjustment | (8,142) | (9,326) |
| Standard Deduction | (3,350) | (3,450) |
| Itemized Ded. | -0- | -0- |
| Exemptions | -0- | -0- |
|  |  |  |
| Total Adjustments | 306,222 | 380,823 |
| Taxable Income Per Return | -0- | -0- |
| Corrected Taxable Income | $306,222 | $380,823 |
|  |  |  |
| TAX: |  |  |
| Tax | 108,764 | 137,961 |
| Self Employment Tax | 16,284 | 18,651 |
|  |  |  |
| Total Corrected Tax | 125,048 | 156,612 |
| Tax per Return | -0- | -0- |
|  |  |  |
| TAX DEFICIENCY | $125,048 | $156,612 |
|  |  |  |
| PENALTIES: |  |  |
|  |  |  |
| Delinquency - IRC 6651(a)(1) | -0- | -0- |
| Delinquency - IRC 6651(a)(2) | 31,262 | 39,153 |
| Estimated Tax - IRC 6654 | 6,656 | 8,379 |
| Delinquency IRC 6651(f) | 90,660 | 113,544 |
|  |  |  |
| TOTAL PENALTIES | 128,578 | 161,076 |
|  |  |  |
| INTEREST: | 225,093 | 231,253 |
| Computed thru        08/22/06 |  |  |

Exhibit 2
Page 21 of 27
Complaint for Review of
Jeopardy Assessment

**Bobby Ephrem**

|  | MFS 1998 | MFS 1999 |
|---|---|---|
| Sch C Gross Profit | 359,964 | 725,699 |
| SE AGI Adjustment | (9,061) | (14,219) |
| Standard Deduction | (3,550) | (3,600) |
| Itemized Ded. | -0- | -0- |
| Exemptions | -0- | -0- |
|  |  |  |
| Total Adjustments | 347,353 | 707,880 |
| Taxable Income Per Return | -0- | -0- |
| Corrected Taxable Income | $347,353 | $707,880 |
|  |  |  |
| TAX: |  |  |
| Tax | 124,354 | 266,901 |
| Self Employment Tax | 18,122 | 28,438 |
|  |  |  |
| Total Corrected Tax | 142,476 | 295,339 |
| Tax per Return | -0- | -0- |
|  |  |  |
| TAX DEFICIENCY | $142,476 | $295,339 |
|  |  |  |
|  |  |  |
| PENALTIES: |  |  |
| Fraud IRC 6663 | -0- | -0- |
| Delinquency - IRC 6651(a)(1) | -0- | -0- |
| Delinquency - IRC 6651(a)(2) | 35,619 | 73,835 |
| Estimated Tax - IRC 6654 | 6,519 | 14,293 |
| Delinquency IRC 6651(f) | 103,295 | 214,121 |
|  |  |  |
| TOTAL PENALTIES | $145,434 | $302,249 |
|  |  |  |
| INTEREST: | $173,695 | $287,040 |
| Computed thru    08/22/06 |  |  |

Enclosure A          17
Page 17 of 20

Exhibit 2
Page 22 of 27
Complaint for Review of
Jeopardy Assessment

**Bobby Ephrem**

| | MFS 2000 | MFS 2001 |
|---|---|---|
| Sch C Gross Profit | 713,017 | 405,346 |
| SE AGI Adjustment | (14,272) | (10,413) |
| Standard Deduction | (3,675) | (3,800) |
| Itemized Ded. | -0- | -0- |
| Exemptions | -0- | -0- |
| | | |
| Total Adjustments | 695,070 | 391,133 |
| Taxable Income Per Return | -0- | -0- |
| Corrected Taxable Income | $695,070 | $391,133 |
| | | |
| TAX: | | |
| Tax | 261,582 | 138,654 |
| Self Employment Tax | 28,544 | 20,825 |
| | | |
| Total Corrected Tax | 290,126 | 159,479 |
| Tax per Return | -0- | -0- |
| | | |
| TAX DEFICIENCY | $290,126 | $159,479 |
| | | |
| PENALTIES: | | |
| Fraud IRC 6663 | -0- | -0- |
| Delinquency - IRC 6651(a)(1) | -0- | -0- |
| Delinquency - IRC 6651(a)(2) | 72,532 | 39,870 |
| Estimated Tax - IRC 6654 | 15,497 | 6,373 |
| Delinquency IRC 6651(f) | 210,341 | 115,622 |
| | | |
| TOTAL PENALTIES | $298,370 | $161,865 |
| | | |
| INTEREST: | $208,854 | $86,070 |
| Computed thru 08/22/06 | | |

Enclosure A
Page 18 of 20

18

Exhibit 2
Page 23 of 27
Complaint for Review of
Jeopardy Assessment

**Bobby Ephrem**

|  | MFS 2002 | MFS 2003 |
|---|---|---|
| Sch C Gross Profit | 1,340,278 | 1,403,932 |
| SE AGI Adjustment | (23,211) | (24,194) |
| Standard Deduction | (3,925) | (4,750) |
| Itemized Ded. | -0- | -0- |
| Exemptions | -0- | -0- |
| Total Adjustments | 1,313,142 | 1,374,988 |
| Taxable Income Per Return | -0- | -0- |
| Corrected Taxable Income | $1,313,142 | $1,374,988 |
| TAX: |  |  |
| Tax | 492,252 | 468,849 |
| Self Employment Tax | 46,422 | 48,387 |
| Total Corrected Tax | 538,674 | 517,236 |
| Tax per Return | -0- | -0- |
| TAX DEFICIENCY | $538,674 | $517,236 |
| PENALTIES: |  |  |
| Fraud IRC 6663 | -0- | -0- |
| Delinquency - IRC 6651(a)(1) | -0- | -0- |
| Delinquency - IRC 6651(a)(2) | 110,428 | 74,999 |
| Estimated Tax - IRC 6654 | 18,001 | 13,536 |
| Delinquency IRC 6651(f) | 390,539 | 374,996 |
| TOTAL PENALTIES | $518,967 | $463,531 |
| INTEREST: | $210,605 | $144,657 |
| Computed thru    08/22/06 |  |  |

Enclosure A
Page 19 of 20

19

Exhibit 2
Page 24 of 27
Complaint for Review of
Jeopardy Assessment

**Bobby Ephrem**

|  | MFS 2004 | MFS 2005 |
|---|---|---|
| Sch C Gross Profit | 1,404,647 | 1,631,370 |
| SE AGI Adjustment | (24,259) | (27,426) |
| Standard Deduction | (4,850) | (5,000) |
| Itemized Ded. | -0- | -0- |
| Exemptions | -0- | -0- |
|  |  |  |
| Total Adjustments | 1,375,538 | 1,598,944 |
| Taxable Income Per Return | -0- | -0- |
| Corrected Taxable Income | $1,375,538 | $1,598,944 |
|  |  |  |
| TAX: |  |  |
| Tax | 468,760 | 546,662 |
| Self Employment Tax | 48,518 | 54,851 |
|  |  |  |
| Total Corrected Tax | 517,278 | 601,513 |
| Tax per Return | -0- | -0- |
|  |  |  |
| TAX DEFICIENCY | $517,278 | $601,513 |
|  |  |  |
|  |  |  |
| PENALTIES: |  |  |
| Fraud IRC 6663 | -0- | -0- |
| Delinquency - IRC 6651(a)(1) | -0- | -0- |
| Delinquency - IRC 6651(a)(2) | 43,969 | 15,038 |
| Estimated Tax - IRC 6654 | 15,015 | 24,128 |
| Delinquency IRC 6651(f) | 375,027 | 436,097 |
|  |  |  |
| TOTAL PENALTIES | $434,010 | $475,262 |
|  |  |  |
| INTEREST: | $89,793 | $27,932 |
| Computed thru       08/22/06 |  |  |

Enclosure A
Page 20 of 20                                    20

Exhibit 2
Page 25 of 27
Complaint for Review of
Jeopardy Assessment

| Form **2848** | **Power of Attorney** | OMB No. 1545-0150 |
|---|---|---|
| (Rev. March 2004)<br>Department of the Treasury<br>Internal Revenue Service | **and Declaration of Representative**<br>▶ Type or print. ▶ See the separate instructions. | **For IRS Use Only**<br>Received by<br>Name _____<br>Telephone _____<br>Function _____<br>Date ___ / ___ / ___ |

**Part I** **Power of Attorney**
Caution: *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Bobbie Ephrem<br><br>(Address withheld to preserve<br>statutory/constitutional privileges) | Withheld to preserve<br>statutory/constitutional<br>privileges | N/A |
| | Daytime telephone number<br>(      ) | Plan number (if applicable)<br>N/A |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

c/o Marc Blackman
(503) 228-0487

**2 Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| Marc D. Blackman<br>Ransom Blackman LLP<br>1400 Congress Center<br>1001 S.W. Fifth Ave. | CAF No. ................................<br>Telephone No. (503) 228-0487<br>Fax No. (503) 227-5984<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Portland, OR 97204 | CAF No. ................................<br>Telephone No. ................................<br>Fax No. ................................<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address | CAF No. ................................<br>Telephone No. ................................<br>Fax No. ................................<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.)<br>or Civil Penalty (see the instructions for line 3) | Tax Form Number<br>(1040, 941, 720, etc.) | Year(s) or Period(s)<br>(see the instructions for line 3) |
|---|---|---|
| Income Tax | 1040 | 1996 to present |
| | | |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** . . . . . . . . . . . . ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: ......................
................................................................................................
................................................................................................
................................................................................................

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.    Cat. No. 11980J    Form **2848** (Rev. 3-2004)

Enclosure B
Page 1 of 2

Exhibit 2
Page 26 of 27
Complaint for Review of
Jeopardy Assessment

Form 2848 (Rev. 3-2004)                                                                                      Page **2**

**7  Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

**a**  If you also want the second representative listed to receive a copy of notices and communications, check this box  .  . ▶ ☐

**b**  If you do not want any notices or communications sent to your representative(s), check this box  .  .  .  .  .  . ▶ ☐

**8  Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you **do not** want to revoke a prior power of attorney, check here.  .  .  .  .  .  .  .  .  .  . ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9  Signature of taxpayer(s).** If a tax matter concerns a joint return, **both** husband and wife must sign if joint representation is requested; otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

| | | |
|---|---|---|
| x _(signature)_ | 8/18/06 | |
| Signature | Date | Title (if applicable) |

Bobbie Ephrem              ☐☐☐☐☐

Print Name                   PIN Number          Print name of taxpayer from line 1 if other than individual

| | | |
|---|---|---|
| | | |
| Signature | Date | Title (if applicable) |

Print Name                   ☐☐☐☐☐ PIN Number

**Part II**   **Declaration of Representative**

**Caution:** Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

  **a**  Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

  **b**  Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.

  **c**  Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

  **d**  Officer—a bona fide officer of the taxpayer's organization.

  **e**  Full-Time Employee—a full-time employee of the taxpayer.

  **f**  Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

  **g**  Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).

  **h**  Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See **Unenrolled Return Preparer** on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation—Insert above letter **(a–h)** | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| a | Oregon | | 08/18/06 |
| | | | |
| | | | |

Form **2848** (Rev. 3-2004)

Enclosure B
Page 2 of 2

Exhibit 2
Page 27 of 27
Complaint for Review of
Jeopardy Assessment